Jennifer **BURTON;** Francis Burton; and Nia Burton, by her next friend, Francis Burton; On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,

v.

**WILLIAM BEAUMONT HOSPITAL;** Beaumont Properties, Inc.; American Hospital Association; John Does 1 Through 10, Defendants.

No. 04–72735.

United States District Court, E.D. Michigan, Southern Division.

Dec. 3, 2004.

Frank J. Kelley, Jennifer M. Fitzgerald, Steven D. Weyhing, Lansing, MI, for Plaintiff.

Gordon J. Walker, Bloomfield Hills, MI, Leonard M. Niehoff, Ann Arbor, MI, for Defendant.

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

COHN, District Judge.

### I. Introduction

This is a health-care case that plaintiffs eventually seek to certify as a class action.[1]

Plaintiffs Jennifer Burton, Francis Burton, and Nia Burton[2] (collectively referred to as the Burtons) are suing Defendants William Beaumont Hospital and Beaumont Properties, Inc. (collectively referred to as Beaumont),[3] American Hospital Association (AHA), and John Does 1 through 10.

The complaint is highly argumentative and is not in conformity with FED.R.CIV.P. 8(a), which calls for, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief...." The Burtons assert the following claims in the complaint, listed by count number: (1) third-party breach of contract; (2) breach of contract; (3) breach of duty of good faith and fair dealing; (4) breach of charitable trust; (5) violation of the Michigan Consumer Protection Act (MCPA), MICH. COMP. LAWS § 445.901 *et seq.;* (6) violation of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395dd; (7) unjust enrichment/constructive trust; (8) injunctive/declaratory relief; (9) violation of federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.;* (10) violation of 42 U.S.C. § 1983 (alleging violations of the Fifth and Fourteenth Amendments of the United States Constitution); (11) civil conspiracy/concert of action; and (12) aiding and abetting.[4]

Before the Court is (1) Beaumont's Motion to Dismiss and (2) AHA's Motion to Dismiss. For the reasons that follow, the motions are GRANTED IN PART and DENIED IN PART.

---

1. While the complaint is styled "Class Action Complaint," as of now it is an action by the named plaintiffs only.

2. Nia Burton is a minor and is represented in this action by her mother, Francis Burton.

3. Beaumont says that Beaumont Properties, Inc., was absorbed into William Beaumont Hospital in 2002 and no longer exists as a separate legal entity.

4. The complaint only makes allegations against AHA for counts eleven (civil conspiracy/concert of action) and twelve (aiding and abetting).

## II. Background

### A. Factual Background[5]

Jennifer Burton and Nia Burton received medical treatment at Beaumont's Emergency Room.[6] The Burtons did not have health insurance at the time of their treatment at Beaumont. The Burtons claim that Beaumont required them to sign forms that guaranteed payment of the medical charges. They also say that Beaumont billed them "excessive and inflated rates" for medical care and "aggressively pursued the collection of these inflated charges" through "numerous harassing bills and collection letters...."[7]

The Burtons do not challenge the quality of the medical care they received. Rather, they claim that because the Internal Revenue Service has granted Beaumont tax-exempt status under 26 U.S.C. § 501(c)(3), Beaumont has a duty to provide free or discounted medical care to the uninsured and that the Burtons have a right to bring suit to enforce this duty. The Burtons say that Beaumont "provide[s] little charity to [its] uninsured patients" and charges its uninsured patients "the highest and full undiscounted cost for medical care at grossly inflated rates from the actual cost of providing such services...." The Burtons claim that they are third-party beneficiaries of a contract between the government and Beaumont based on Beaumont's § 501(c)(3) status.

AHA is a not-for-profit association of health-care provider organizations.[8] AHA educates and informs its members on health-care issues and advocates on behalf of its members with respect to national health-care policy development. The Burtons claim that AHA conspired with Beaumont to breach (1) Beaumont's alleged contracts between (a) the government and Beaumont and (b) Beaumont and the Burtons, (2) Beaumont's alleged duty of good faith and fair dealing, and (3) the MCPA. The Burtons further allege that AHA aided and abetted the same breaches and violations. The Burtons base these claims primarily on AHA's advocacy on behalf of its members with respect to health-care policy issues and AHA's communications to its members about billing and collections.

### B. Procedural Background

This action is one of dozens of lawsuits filed across the country recently by uninsured patients alleging that hospitals are, *inter alia*, violating federal law regarding

5. The factual background is gleaned from the parties' papers.

6. Although the complaint lists Francis Burton as a plaintiff, the complaint contains no allegations based on any medical care sought or received by Francis Burton for herself. Rather, the only allegation is that her daughter (Nia Burton) sought and received medical treatment from Beaumont.

7. The complaint is silent with respect to when Jennifer and Nia Burton went to Beaumont's Emergency Room, why they went there, or what medical treatment they received there. The only statement in the complaint with respect to any medical condition is at paragraph 50, which states in part that Nia Burton "was approximately 1 year old at the time and required treatment for breathing difficulties." It is not alleged, however, that Nia Burton went to Beaumont's Emergency Room for breathing difficulties or received treatment for that condition while at Beaumont. Likewise, there is no information in the complaint regarding the amount Beaumont charged the Burtons for their medical treatment—a conspicuous omission, given that the essence of the Burtons' complaint is an allegation that Beaumont overcharged them for medical care.

8. AHA's website indicates that nearly "5,000 hospitals, health care systems, networks, and other providers of care and 37,000 individual members come together to form the AHA." *See* http://www.aha.org/aha/about/index.html.

providing charity care. Several claimants in these cases filed with the Judicial Panel on Multidistrict Litigation (JPML) a motion to transfer and consolidate the pending actions to a single district court under 28 U.S.C. § 1407. The JPML entitled the proceedings "In re Not–for–Profit Hospitals/Uninsured Patients Litigation," MDL No. 1641. Based on the motion before the JPML, the Burtons filed a Motion to Stay Proceedings Pending Transfer to Multidistrict Litigation (MDL). At the time of the Burtons' motion to stay, actions like this one were before 21 federal district courts.[9] The Court denied the Burtons' motion and ordered this action to proceed in the regular course. *See* Sept. 28, 2004 Order, Docket No. 9.

On October 19, 2004, the JPML issued an order denying the other claimants' motion to transfer and consolidate on the basis that "centralization would neither serve the convenience of the parties and witnesses nor further the just and efficient conduct of this litigation." *In re Not–For–Profit Hospitals/Uninsured Patients Litigation*, 341 F.Supp.2d 1354 (Jud.Pan. Mult.Lit.2004). Additionally, the Panel noted that the movants "have failed to persuade us that these actions share sufficient common questions of fact to warrant Section 1407 transfer." *Id.* The JMPL

listed sixteen actions considered for consolidation and transfer. Of those, district courts have ruled on three. The Court's review of the dockets of the other cases reveals that twelve of the cases have pending motions to dismiss by the defendants. The defendants in one case have to date not filed a motion to dismiss or any other dispositive motion. AHA is among the named defendants in all but one of the sixteen actions listed in the JMPL order.

Notably, the three district courts that have ruled on these lawsuits to date have found that the plaintiffs have failed to state causes of action. In *Kizzire v. Baptist Health Sys., Inc.*, 343 F.Supp.2d 1074, 1075 (N.D.Ala.2004), the only other published opinion to date regarding a case like this one, the district court concluded that the doctrine of *res judicata* barred all of the plaintiffs' claims against the defendants except for an EMTALA claim because the plaintiffs' claims against the defendants were compulsory counterclaims that plaintiffs were required to assert in a prior state-court action. *Id.* at 1082–84.[10] In *Amato et al. v. UPMC et al.*, No. 04–0125 (W.D.Pa. Nov. 23, 2004) United States Magistrate Judge Robert Mitchell issued a Report and Recommendation recommending that the defendants' motion to

---

**9.** The JMPL noted that the 21 districts were as follows: N.D. Ala., D. Ariz., N.D. Cal., D. Colo., M.D. Fla., S.D. Fla., M.D. Ga., N.D. Ga., S.D. Ga., N.D. Ill., D. Minn., S.D. Miss., E.D. Mo., N.D. Ohio, D. N.J., D. N.M., S.D.N.Y., W.D. Pa., M.D. Tenn., E.D. Tex., and N.D. Tex. The JMPL also stated that it had been notified of purportedly related actions filed in E.D. Ark., D. Conn., N.D. Fla., S.D. Ill., M.D. La., D. Mass., E.D. Mich., S.D. Miss., E.D.N.Y., E.D. Pa., and E.D. Va.

**10.** It is instructive to note that the complaint in *Kizzire* made almost identical argumentative allegations against the defendants as the Burtons assert here against Beaumont. *See id.* at 1074–79. The *Kizzire* complaint did, however, contain information that is notice-

ably absent from the complaint in this action. Namely, the complaint stated the dates the plaintiffs received medical treatment from the defendant hospital, why they sought treatment at the hospital, what medical treatment they received, and how much the hospital charged them for the medical care—information the Burtons do not provide here. *See id.* at 1079–81. The plaintiffs in *Kizzire* also brought the same claims against the defendants as the Burtons bring against Beaumont, except for the FDCPA, MCPA, and 42 U.S.C. § 1983 claims. *See id.* at 1074. Additionally, the *Kizzire* complaint brought the same claims against AHA as the Burtons bring against AHA here.

dismiss the complaint be granted. *Id.* at 1. As is true in this case, the primary allegation against the defendants in *Amato* was the plaintiffs' claim that the defendant hospital breached an alleged contract with the United States government by virtue of its status as a 26 U.S.C. § 501(c)(3) organization and that the plaintiffs should recover for the breach as third-party beneficiaries of the contract. *Id.* at 4. The Magistrate Judge concluded that the plaintiffs (1) did not state a claim for third-party breach of contract, (2) did not state a claim for breach of a charitable trust and that they did not have standing to enforce such a claim, and (3) did not state a claim for an EMTALA violation. *Id.* at 6–10. The Magistrate Judge recommended that the district court decline to exercise supplemental jurisdiction over the plaintiffs' state-law claims, which were claims identical to those the Burtons bring here against Beaumont (except for the MCPA violation).[11] *Id.* at 3, 10. Finally, in *Darr et al. v. Sutter Health*, No. 04–02624, 2004 WL 2873068 (N.D.Cal. Nov. 30, 2004), the district court consolidated two similar cases and ruled that the plaintiffs failed to state a claim against the defendant hospital. *Id.* at 2. Again, the *Darr* complaint brought identical claims against the defendant hospital as the Burtons bring against Beaumont, with the exception of the EMTALA, 42 U.S.C. § 1983, and MCPA claims.[12] The district court held that the plaintiffs in *Darr* failed to state a claim for (1) third-party breach of contract and (2) violation of FDCPA. *Id.* at 7–8. The court declined to exercise supplemental jurisdiction over the remaining state-law claims. *Id.* at 9.

## III. Discussion

### A. Legal Standard

A FED.R.CIV.P. 12(b)(6) motion seeks dismissal for a plaintiff's failure to state a claim upon which relief can be granted. "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir.2001). "To survive a motion to dismiss under Rule 12(b)(6), a 'complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir.1999) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). The complaint must allege more than "bare assertions of legal conclusions" to survive a Rule 12(b)(6) motion. *Scheid*, 859 F.2d at 436.

### B. The Claims

As an initial matter, Beaumont correctly notes that this case involves claims arising under federal and state law. Beaumont says that the Burtons have failed to state a claim for any of the federal-law claims; therefore, Beaumont maintains, the Court should decline to exercise supplemental jurisdiction over the state-law claims. In analyzing the two motions, the Court will first evaluate the viability of the claims arising under federal law and then, if necessary, proceed to the state-law claims.

---

11. The *Amato* plaintiffs did, however, assert a claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, a statute analogous to the MCPA. *See id.* at 3.

12. The *Darr* plaintiffs did, however, allege a violation of the California Consumers Legal Remedies Act, a statute analogous to the MCPA. *See id.* at 4.

*Claims Arising Under Federal Law*

### 1. Third–Party Breach of Contract Under 26 U.S.C. § 501(c)(3)

In Count One, the Burtons claim that they are third-party beneficiaries of Beaumont's agreements with the United States government, the State of Michigan, and local governments.[13] The Burtons say that Beaumont breached these purported agreements by, *inter alia,* failing to provide medical care to the Burtons "and the Class" without regard to their ability to pay and charging the Burtons "and the Class" more than insured patients for the same medical services.[14]

Beaumont says that no court has ever held that a not-for-profit organization enters into a contract with the United States when it qualifies for tax-exempt status under § 501(c)(3). The Burtons do not cite any such a case, nor can the Court find such a case. Nevertheless, the Burtons maintain that other courts have held that hospitals that applied for and accepted Hill–Burton funds, 42 U.S.C. § 291c,[15] were contractually obligated to provide charity care to uninsured patients and that third-party beneficiaries of these contracts could bring actions to enforce the contracts. The Burtons' arguments with respect to the Hill–Burton Act are not well-taken for these reasons: (1) no allegations in the complaint refer to the Hill–Burton Act or Beaumont's alleged acceptance of funds under the Act, and (2) unlike § 501(c)(3), the Hill–Burton Act provides for a private right of action to enforce the Act, *see* 42 U.S.C. § 300s–6.

 In response to the Burtons' claim that Beaumont must provide mutually affordable medical care as a result of its status as a § 501(c)(3) organization, Beaumont relies on Internal Revenue Service (IRS) Revenue Ruling 69–545, in which the IRS adopted the "community benefit" standard for determining if a not-for-profit hospital is operated for charitable purposes under § 501(c)(3). The ruling provides in part that

> [t]he promotion of health, like the relief of poverty and the advancement of education and religion, is one of the purposes in the general law of charity that is deemed beneficial to the community as a whole even though the class of beneficiaries eligible to receive a direct benefit from its activities does not include all members of the community, such as indigent members of the community, provided that the class is not so small that its relief is not of benefit to the community.

Beaumont also notes that Revenue Ruling 69–545 modified prior law to remove previous requirements "relating to caring for patients without charge or at rates below cost." Thus, Beaumont maintains, the Burtons' assertion that Beaumont must provide mutually affordable medical care as a § 501(c)(3) organization is without foundation and the Burtons therefore can-

---

13. Paragraph 68 of the complaint alleges that Beaumont entered into "an express and/or implied Agreement with the United States Government" under § 501(c)(3).

14. The allegations the Burtons make with respect to "the Class" are superfluous. Although the Burtons make allegations with respect to themselves and "the Class," the Burtons have not moved for class certification and thus no class has been certified.

Therefore, the Court will only address allegations as to the Burtons and ignore any allegations that pertain to a non-existent "class."

15. The Hill–Burton Act "was designed to promote the construction and modernization of hospitals." *Baptist Hosp. v. Sec'y of Health and Human Services,* 802 F.2d 860, 869 (6th Cir.1986).

not maintain an action for third-party breach of contract. Beaumont is correct.

The Burtons also say that they have an implied right of action under § 501(c)(3). Beaumont disputes this assertion, maintaining that the Internal Revenue Code expressly vests exclusive enforcement authority in the Secretary of Treasury. *See* 26 U.S.C. § 7801. Despite this, however, the Burtons say that *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), supports the finding of an implied right of action in this case. The Burtons say that it is not statutory remedies they seek, but rather contractual remedies based on Beaumont's alleged formation of a contract with the government.

■ The assertion that the Burtons' have an implied right of action under § 501(c)(3) is extraordinary given the fact that the Supreme Court has counseled against construing a statute as creating a contractual relationship. *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka and Santa Fe Ry. Co.,* 470 U.S. 451, 465–66, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985):

> For many decades, this Court has maintained that absent some clear indication that the legislature intends to bind itself contractually, the presumption is that "a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise."

(internal citation omitted).

The Court of Appeals for the Sixth Circuit has noted that while the Supreme Court once used the test set forth in *Cort* to determine whether a statute creates an implied right of action, the *Cort* test has since been modified and "is most appropriately described now as 'whether Congress intended to create, either expressly or by implication, a private cause of action.'" *Bailey v. Johnson,* 48 F.3d 965, 968 (6th Cir.1995) (internal citation omitted); *see also Alexander v. Sandoval,* 532 U.S. 275, 286–87, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (holding that Congressional intent is determinative when ascertaining whether a private cause of action exists under a statute). The cases on which the Burtons rely in support of their implied right of action theory all involve the Hill–Burton Act; none of them involves § 501(c)(3).[16] As noted above, the Hill–Burton Act allows for a private right of action. Section 501(c)(3), however, does not. As Beaumont notes in its brief, the absence of a private right of action under § 501(c)(3) is noteworthy because Congress has established private rights of action in the Internal Revenue Code for other tax-related matters. *See, e.g.,* 26 U.S.C. §§ 7431(a)(1), 7433; *see also Salazar v. Brown,* 940 F.Supp. 160, 166 (W.D.Mich.1996) (holding that plaintiffs did not have private right of action under the Federal Insurance Contributions Act (FICA) and noting that "the Sixth Circuit would clearly find it persuasive that Congress has passed thousands of amendments to the ... Internal Revenue Code, virtually on a yearly basis, without once creating a private right of action.").

In sum, the record and case law demonstrates that the Burtons cannot prove a set of facts to support their claim for third-party breach of contract because there is

---

**16.** The Burtons' counsel at oral argument relied on *Euresti v. Stenner,* 458 F.2d 1115 (10th Cir.1972), for the proposition that the Burtons have a third-party breach of contract action against Beaumont based on its § 501(c)(3) status. This argument is not well taken. Contrary to what the Burtons' counsel represented to the court at oral argument, *Euresti* makes absolutely no mention of the defendant hospital having § 501(c)(3) status. Indeed, no mention of 26 U.S.C. § 501(c)(3) is found anywhere in that opinion. *Euresti* involved a hospital receiving Hill–Burton funds, a fact the Burtons do not allege here.

no legal authority to support the notion that a theory of liability exists based on Beaumont's status as a § 501(c)(3) organization.

## 2. Breach of Charitable Trust Under 26 U.S.C. § 501(c)(3)

Count Four of the complaint alleges that Beaumont entered into a "public charitable trust to provide mutually affordable medical care to its uninsured patients" by virtue of its § 501(c)(3) status. The Burtons allege that they are the intended beneficiaries of this alleged charitable trust. Again, this count is premised on the existence of a private right of action the Burtons allegedly have to enforce an alleged contract flowing from the fact that Beaumont is a § 501(c)(3) organization. Because the Court has concluded that the Burtons have not stated such a claim, this count likewise fails and must be dismissed.

■ Additionally, and significantly, even if the Burtons were able to establish the existence of a charitable trust and a breach, the Burtons would not be proper parties for purposes of prosecuting the breach. It is well established that private parties like the Burtons may not sue to enforce a charitable trust in circumstances like the Burtons claim here; rather, the Attorney General is the proper party. As one treatise summarizes:

> As a general rule no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive charitable or other benefits from the operation of the trust. The courts usually require that suits for enforcement be brought by the established representative of the charity, the Attorney General, so that the trustees may not be vexed by frequent suits, possibly based on an inadequate investigation and brought by irresponsible parties, and so that the courts may not find

their calendars clogged with an unnecessarily large amount of litigation.

GEORGE GLEASON BOGERT, BOGERT'S TRUSTS AND TRUSTEES § 414 (2004); *accord* RESTATEMENT (SECOND) OF TRUSTS § 391 cmt. a (1959) ("[s]ince the community is interested in the enforcement of charitable trusts, a suit to enforce a charitable trust can be maintained by the Attorney General of the State in which the charitable trust is to be administered."). Under Michigan law, this principle is codified at MICH. COMP. LAWS § 14.254:

> The attorney general shall have jurisdiction and control and shall represent the people of the state and the uncertain or indefinite beneficiaries in all charitable trusts in this state, and may enforce such trusts by proper proceedings in the courts of this state.

. . . . .

> The attorney general is a necessary party to all court proceedings . . . to terminate a charitable trust or to liquidate or distribute its assets, or . . . to construe the provisions of an instrument with respect to a charitable trust.

M.C.L. § 14.254(a)-(b); *see also Oleksy v. Sisters of Mercy of Lansing, Mich.,* 92 Mich.App. 770, 777, 285 N.W.2d 455 (1979) (affirming trial court's holding that even if a charitable trust were created with respect to a hospital, the court could not consider the issue of whether the hospital breached the trust's terms because Michigan law assigns prosecution of such violations exclusively to the attorney general). Given the fact that Beaumont is a registered Michigan non-profit corporation, the Burtons' complaint regarding how Beaumont allegedly treats indigent and uninsured patients should more appropriately have been addressed to the Attorney General of Michigan. *See* M.C.L. § 14.254.

### 3. EMTALA Violation

Count Six of the complaint alleges that Beaumont violated EMTALA, 42 U.S.C. § 1395dd, because Beaumont allegedly conditioned its medical treatment for the Burtons on their ability to pay for the treatment.[17] The Burtons say that Beaumont required the Burtons to sign "form contracts agreeing to pay [Beaumont] in full for unspecified and undiscounted medical charges," which they claim violates EMTALA. Beaumont says that the Burtons have failed to state an EMTALA claim because, *inter alia*, they received prompt emergency medical care at Beaumont and suffered no personal harm or injury as a result of the medical care that Beaumont provided.[18]

EMTALA requires hospitals with emergency departments to "provide for an appropriate medical screening examination" to determine whether a person presented to the emergency department has an "emergency medical condition." *See* 42 U.S.C. § 1395dd(a). If the patient has an "emergency medical condition" as defined under the statute, the hospital must either further examine the patient and provide appropriate treatment to "stabilize the medical condition," or it must provide for transfer of the patient to another medical facility in accordance with additional provisions under EMTALA. *See* 42 U.S.C. § 1395dd(b)(1)(A)-(B). The statute also provides that

> [a] participating hospital may not delay provision of an appropriate · medical screening examination required under subsection (a) of this section or further medical examination and treatment required under subsection (b) of this section in order to inquire about the individual's method of payment or insurance status.

42 U.S.C. § 1395dd(h). Under section (2)(A) of the statute,

> [a]ny individual who suffers personal harm as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for personal injury under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

Beaumont says that the Burtons do not allege that they were denied emergency treatment because of their inability to

---

**17.** The Court observes that the Burtons' allegations for the EMTALA count are deficient given the very nature of an EMTALA claim. In 1986, Congress enacted EMTALA in an effort to prevent "patient dumping, the practice of refusing medical treatment to those unable to afford it." *See* Michael J. Frank, *Tailoring EMTALA to Better Protect the Indigent: The Supreme Court Precludes One Method of Salvaging a Statute Gone Awry*, 3 DePaul J. Health Care L. 195 (2000); *see also* H.R.Rep. No. 99–241, pt. 1, at 27 (1985) ("[t]he Committee is greatly concerned about the increasing number of reports that hospital emergency rooms are refusing to accept or treat patients with emergency conditions if the patient does not have medical insurance."). The Burtons do not allege that Beaumont refused to accept or treat them; indeed, the Burtons do not allege any defi-

ciency in the quality of the medical care they received at Beaumont. Allegations concerning a visit to a hospital are generally fact intensive. The Burtons, however, do not provide details in the complaint regarding when they visited Beaumont, why they visited Beaumont, or what medical treatment they sought or received while in Beaumont's Emergency Room.

**18.** Beaumont also notes that the Burtons' claims may be barred by EMTALA's two-year statute of limitations, but, as noted above, the complaint does not indicate when the Burtons received medical care at Beaumont. *See* 42 U.S.C. § 1395dd(d)(2)(C) ("No action may be brought under this paragraph more than two years after the date of the violation with respect to which the action is brought.").

pay or that their examination or treatment at Beaumont was delayed even if Beaumont inquired about their ability to pay. The Burtons disagree. The relevant provision of the complaint in dispute reads as follows:

Before the William Beaumont Defendants would provide emergency medical screening and/or treatment for "emergency medical conditions" to the Plaintiffs and the Class, they first analyzed their ability to pay for such medical care and required the Plaintiffs and the Class to sign form contracts agreeing to pay the William Beaumont Defendants in full for unspecified and undiscounted medical charges. The William Beaumont Defendants would not provide emergency medical screening and/or treatment to the Plaintiffs and Class unless they were able to pay for such medical care or until they agreed to sign a form contract guaranteeing payment in full for sum medical care. By conditioning medical screening and/or treatment for "emergency medical conditions" on the Plaintiffs' and the Class' ability to pay and financial guarantees, and refusing to provide emergency medical screening and/or treatment until such guarantees were given, the William Beaumont Defendants violated the EMTALA, 42 U.S.C. § 1395 dd....

Compl. at ¶ 97. A fair reading of the complaint indicates that the Burtons allege that Beaumont would not provide "emergency medical screening and/or treatment" to the Burtons *unless* they signed a contract guaranteeing payment *or until* they signed such a contract. This language alleges that Beaumont would not even provide treatment until the Burtons signed an alleged contract for payment. Although it is true, as Beaumont notes, that the implementing regulations for EMTALA allow hospitals to implement "reasonable registration processes," the express language of

that regulation provides that such processes may not delay screening or treatment:

Hospitals may follow reasonable registration processes for individuals for whom examination or treatment is required by this section, including asking whether an individual is insured and, if so, what that insurance is, as long as that inquiry does not delay screening or treatment. Reasonable registration processes may not unduly discourage individuals from remaining for further evaluation.

42 C.F.R. § 489.24(d)(4)(iv). Here, the complaint charges that Beaumont allegedly would not screen or treat the Burtons until they signed a contract guaranteeing payment for medical services. This suggests that screening or treatment could have been delayed by virtue of Beaumont's alleged requirement of the Burtons to sign the purported contract. While it is true that the Burtons do not challenge the quality of treatment received at Beaumont, specific inquiries into whether Beaumont's alleged registration process actually delayed the Burtons' emergency screening and/or treatment is improper at this stage of the litigation because a motion to dismiss merely tests the factual allegations in the complaint. Any further inquiry is more appropriate at the summary judgment stage.

Beaumont also says that the Burtons have failed to state an EMTALA claim because they did not allege "personal harm," as is required under EMTALA to bring a civil action against a hospital to obtain damages available for personal injury. Beaumont is correct. The complaint states that "[s]uch violations of 42 U.S.C. § 1395 dd have proximately caused the Plaintiffs and the Class economic injury and other damages." Without more specifics in the complaint, the Court cannot determine if the Burtons suffered ade-

quate "personal harm" that is required to state an EMTALA claim. If the Burtons believe that they have a stand-alone EMTALA claim, they must file an amended complaint and properly plead an EMTALA claim.

### 4. FDCPA Violation

Count Nine of the complaint alleges that Beaumont has pursued the Burtons for debts allegedly owed to Beaumont. The complaint alleges that the debts are covered by 15 U.S.C. § 1692a(5) and states that the FDCPA mandates that a "debt collector may not use false, deceptive or misleading representations or means in connection with the collection of a debt." The complaint says that Beaumont's conduct in allegedly overcharging uninsured patients and collecting debts "is an unconscionable, discriminating, misleading, and deceptive creation and collection of inflated debts from uninsured patients" that violates the FDCPA.

■ Beaumont says that the Burtons have not stated a claim because Beaumont is not a "debt collector" under the FDCPA. The FDCPA provides a comprehensive definition of the term "debt collector," and it is clear from the statutory definition of that term that it does not apply to a creditor that is collecting its own debt. *See* 15 U.S.C. 1692a(6). Case law is in accord. *See Montgomery v. Huntington Bank,* 346 F.3d 693, 698–99 (6th Cir.2003) (affirming dismissal of FDCPA claims because defendant, a bank, was not a debt collector within the meaning of FDCPA; rather, it was one of the plaintiff's creditors); *Stafford v. Cross Country Bank,* 262 F.Supp.2d 776, 794 (W.D.Ky.2003); *Bleich v. Revenue Maximization Group, Inc.,* 239 F.Supp.2d 262,

264 (E.D.N.Y.2002) (holding that a hospital, which sought to collect a patient's debt, could not be a "bill collector" under the FDCPA).

The Burtons respond that the FDCPA expressly provides for actions against a creditor in some circumstances:

> [T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692(a)(6). While this statement is true, the Burtons simply assert this claim in their brief without any argument regarding why this portion of the definition of a "debt collector" is applicable to Beaumont. Indeed, nothing in the complaint alleges that Beaumont attempted to collect debts in any name other than its own. The Burtons cite *Maguire v. Citicorp Retail Serv., Inc.,* 147 F.3d 232 (2d Cir.1998) for this portion of their argument. In *Maguire,* defendant Citicorp sent the plaintiff a letter from "Debtor Assistance." *Id.* at 234. The court could not find that "a least sophisticated consumer would have known that the Debtor Assistance letter was from Citicorp." *Id.* at 236. The court said the letter created the impression that a third party was collecting Citicorp's debts.[19] *Id.* This case provides no support for the Burtons' claim here, however, because they did not allege in the complaint that Beaumont at any time used a name other than its own to collect its debts.

The Burtons next say in their brief that Beaumont violated the FDCPA by misrepresenting "the character, amount, or legal status of any debt." *See* 15 U.S.C. § 1692e(2)(A). A reading of this portion of

---

**19.** In fact, Debtor Assistance was a unit of Citicorp responsible for delinquent accounts.

*Id.* at 234.

the FDCPA, however, reveals that it only applies to debt collectors:

### § 1692e. False or misleading representations

A **debt collector** may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . . . .

(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

. . . . .

15 U.S.C. § 1692e(2)(A) (emphasis added). Because the Court has determined that the Burtons cannot prove that Beaumont is a "debt collector" within the meaning of the FDCPA based on the allegations in the complaint, their claim that Beaumont violated § 1692e(2)(A) also fails.

### 5. 42 U.S.C. § 1983 Claim

The Burtons seek recovery under Count Ten of the complaint for what they claim to be Fifth and Fourteenth Amendment equal protection violations based on "invidious discrimination against uninsured patients" by "[c]harging uninsureds considerably more for their health care than insured patients...."[20] Beaumont says that the Burtons have failed to state a claim because Beaumont is not a state actor and it is well established that a 42 U.S.C. § 1983 claim only applies to those acting under color of state law.

■ Section 1983 on its own creates no substantive rights; rather, it is a vehicle by which a plaintiff may seek redress for deprivations of rights established in the Constitution or federal law. *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). "To successfully establish a claim under § 1983, a claimant must show that he or she was deprived of a right secured by the Constitution and the laws of the United States by one acting under the color of law." *Ahlers v. Schebil,* 188 F.3d 365 (6th Cir.1999) (internal citations omitted).

The complaint alleges that Beaumont participates in the Medicaid and Medicare programs and receives payments from those government programs, that Beaumont has received "charity care subsidies" from the State of Michigan, that Beaumont acts pursuant to contracts with the federal and state governments to determine the rates it charges uninsured patients, and that Beaumont claims that "federal and state laws compelled [it] to charge inflated undiscounted rates for uninsured patients."

■ First, with respect to the Burtons' statement that Beaumont claimed that certain laws compelled it to charge allegedly inflated rates for uninsured patients, nothing in the record indicates that Beaumont made such a claim. Additionally, this statement is in contradiction with paragraph 73 of the complaint, which is incorporated by reference into the Burton's § 1983 claim. Paragraph 73 alleges that Beaumont "in [its] sole discretion" set "unspecified and undocumented charges for medical care" that the Burtons were "re-

---

**20.** The Fourteenth Amendment is applicable to the states and provides in part that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. In *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the Supreme Court held that equal protection applies to the federal government through the due process clause of the Fifth Amendment ("nor shall any person ... be deprived of life, liberty, or property, without due process of law....").

quired to agree to pay." The Burtons do not cite to anything to support their claim that federal or state laws compel Beaumont to charge inflated rates.

Equally baseless is the Burtons' conclusory statement that state action is present because Beaumont misapplies federal and state laws for improper purposes. The Burtons cite a Fifth Circuit case, *Hollis v. Itawamba County Loans,* 657 F.2d 746, 749–50 (5th Cir.1981), in support of this argument. Beaumont correctly notes in its reply that in *Hollis,* the plaintiff sued under § 1983 claiming Fourteenth Amendment violations. *Id.* at 747. The plaintiff alleged that a private creditor acted in concert with a state-court judge and county constable to abuse Mississippi's replevin statute. *Id.* The Fifth Circuit reversed the district court's dismissal of the action, stating that the plaintiff stated a claim based upon improper abuse of Mississippi's replevin procedure. *Id.* at 749–50. The Fifth Circuit later clarified its ruling in *Hollis,* however, by noting that *Hollis* involved an *ex parte,* prejudgment situation in which "courts have found the state is itself participating in the deprivation of property...." *Earnest v. Lowentritt,* 690 F.2d 1198, 1201 (5th Cir.1982). The *Earnest* court went on to note that "[p]rivate misuse of a state statute alone does not describe conduct that can be attributed to the state." *Id.* The Burtons do not allege that Beaumont acted in concert with the government with respect to the alleged constitutional violations at issue.

▮ To the extent the Burtons base a claim of state action on Beaumont's receipt of Medicaid and Medicare funds or alleged "charity care subsidies," these arguments likewise fail to establish state action. This Court and other courts have held that a private hospital is not transformed into a state actor by virtue of receiving federal and state funding and tax-exempt status.

*See Jeung v. McKrow,* 264 F.Supp.2d 557, 571 (E.D.Mich.2003) (dismissing § 1983 claim because "private hospitals operating as not-for-profit entities under the Internal Revenue Code and receiving public funds through federal welfare programs are not thereby converted into state actors within the meaning of Section 1983."); *see also Sarin v. Samaritan Health Ctr.,* 813 F.2d 755, 759 (6th Cir.1987) (holding that plaintiff failed to state a claim under § 1983 because state regulation of hospital and receipt of Medicare and Medicaid funds do not establish state action); *Beyer v. Lakeview Cmty. Hosp.,* 187 F.3d 634, 1999 WL 552606, *1, *4 (6th Cir.1999) (affirming dismissal of § 1983 claims against private hospital because no state action was present).

### Claims Arising Under State Law

In the interests of economy, it seems appropriate for the Court to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367.

#### 1. Breach of Contract

Count Two of the complaint alleges that the Burtons "entered into express form contracts" with Beaumont that required the Burtons "to agree to pay unspecified and undocumented charges for medical care set by [Beaumont] in [its] sole discretion." The Burtons allege that by admitting the Burtons into the hospital, Beaumont "undertook an express and/or implied contractual obligation to charge [the Burtons] no more than a fair and reasonable charge for such medical care." The Burtons say that Beaumont breached the purported contract by charging the Burtons "the highest and full undiscounted cost for medical care" and that the alleged breach caused the Burtons "economic injury and other damages."

Because Beaumont assumed that the Court would find that none of the Burtons'

federal claims is viable, Beaumont failed to brief this state-law breach of contract claim for the instant motion. Accordingly, without a full briefing of this issue, the Court cannot determine whether the claim should be dismissed.

### 2. Breach of Duty of Good Faith and Fair Dealing

Count Three of the complaint alleges that Beaumont breached its duty of good faith and fair dealing to the Burtons. This claim makes reference to (1) the alleged third-party beneficiary status the Burtons have based on Beaumont's § 501(c)(3) status, and (2) the alleged contract between the Burtons and Beaumont when the Burtons were admitted to Beaumont and allegedly signed documents requiring them to agree to pay for their medical care. This claim fails to the extent that the count alleges a violation of good faith and fair dealing with respect to an alleged contract based on Beaumont's § 501(c)(3) status. As discussed above, the Burtons have failed to state a claim for third-party breach of contract.

With respect to the alleged state-law breach of contract under Count Two, Beaumont did not brief this issue. Accordingly, the Court cannot consider whether to dismiss any claim against Beaumont for an alleged breach of duties of good faith and fair dealing under the alleged contract.

### 3. MCPA Violation

The Burtons allege in Count Five of the complaint that Beaumont violated the MCPA by charging the Burtons "the highest and full uncompensated cost for medical care and ... a higher amount than its insured patients for the same medical services despite its charitable, nonprofit, tax exempt status. . . ." The Burtons also claim that Beaumont's "aggressive, abusive, and harassing efforts to collect such inflated, undiscounted and uncompensated

medical debt" from the Burtons violates the MCPA.

As noted above, Beaumont has not briefed this issue. Accordingly, the Court cannot consider whether this claim should be dismissed.

### 4. Unjust Enrichment/Constructive Trust

Count Seven alleges that Beaumont has been unjustly enriched at the Burtons' expense because it has failed to provide "mutually affordable medical care ... despite receiving millions of dollars in federal, state, and local tax exemptions for such purpose." The complaint alleges that as a result of Beaumont's breach of contract (purportedly based on the Burtons' claim that a contract exists based on Beaumont's § 501(c)(3) status) Beaumont is in possession of "tax savings, profits and other assets that [it] in good conscience and equity should not be entitled to retain." The Burtons ask the Court to impose a constructive trust in the amount of Beaumont's federal, state and local tax exemption savings.

This claim is apparently based on the Burtons' claim that a contract exists between the government and Beaumont based on Beaumont's § 501(c)(3) status and that the Burtons are third-party beneficiaries of such a contract. As discussed above, however, the Court finds that the Burtons have failed to state a claim for a third-party breach of contract. This claim, therefore, must fail also.

### 5. Civil Conspiracy/Concert of Action

Count Eleven of the complain alleges wrongdoing by Beaumont and AHA. Specifically, it alleges that AHA "actively conspired and acted in concert with [Beaumont] to wrongfully retain [its] tax exempt status and breach [Beaumont's] contracts with the United States Government, State

of Michigan, and other local governmental bodies, the Plaintiffs and the Class...." This count also alleges that AHA conspired with Beaumont to violate MCPA.

This claim fails to the extent it alleges a conspiracy with respect to the Burtons' claim for third-party breach of contract based on Beaumont's § 501(c)(3) status. The language of this count, however, also encompasses (1) the Burtons' claim that Beaumont breached an alleged contract with the Burtons, (2) the Burtons' claim that Beaumont breached an alleged duty of good faith and fair dealing with respect to the alleged contract between Beaumont and the Burtons, and (3) the Burtons' claim for violation of MCPA. As discussed above, these claims have not been briefed. Accordingly, the Court cannot consider whether the Burtons have stated a claim for conspiracy with respect to these three claims.

### 6. Aiding and Abetting

Count Twelve of the complaint alleges that AHA aided and abetted Beaumont in breaching the same claims detailed in the Burtons' conspiracy claim (Count Eleven). Again, this aiding and abetting claim fails to the extent it argues that AHA aided and abetted Beaumont in a third-party breach of contract by virtue of its § 501(c)(3) status because the Court concludes that the Burtons have failed to state a claim for third-party breach of contract. The Court cannot, however, consider whether this claim can stand for the other allegations that the parties have not briefed: (1) the state-law breach of contract claim, (2) the good faith and fair dealing claim with respect to the alleged contract between Beaumont and the Burtons, and (3) the MCPA claim.

### Procedural Issue

### 1. Injunctive/Declaratory Relief

Count Eight of the complaint asks the court to enter a preliminary and/or permanent injunction under FED.R.CIV.P. 23(b)(2), ordering Beaumont to stop (1) charging the Burtons the "highest and full undiscounted cost of medical care," (2) charging the Burtons "a higher amount for medical services than its insured patients for the same services," and (3) using "aggressive, abusive, and harassing collection practices such as collection lawsuits, liens, and garnishments to collect outstanding grossly inflated medical debt" from the Burtons.

Relief under FED.R.CIV.P. 23(b)(2) is for cases certified as class actions. This case has not been so certified, and the Burtons have not yet moved for class certification; therefore, any challenge to this count is not ripe for the Court's consideration.

### IV. Conclusion

In sum, the Court rules on the instant motions as follows:

| COUNT | CLAIM | DISPOSITION |
|---|---|---|
| 1 | Third–Party Breach of Contract | DISMISSED |
| 2 | Breach of Contract | CLAIM REMAINS; the parties failed to brief the issue |
| 3 | Breach of Duty of Good Faith and Fair Dealing | DISMISSED to the extent the claim alleges a violation of good faith and fair dealing with respect to an alleged contract based on Beaumont's § 501(c)(3) status |
| | | CLAIM REMAINS to the extent it alleges a violation based on an alleged contract between Beaumont |

| | | |
|---|---|---|
| | | and the Burtons because the parties did not brief the issue |
| 4 | Breach of Charitable Trust | DISMISSED |
| 5 | Violation of MCPA | CLAIM REMAINS; the parties failed to brief the issue |
| 6 | Violation of EMTALA | DISMISSED |
| 7 | Unjust Enrichment/Constructive Trust | DISMISSED |
| 8 | Injunctive/Declaratory Relief | CLAIM REMAINS; the issue is not ripe for consideration because the Burtons have not moved for class certification |
| 9 | Violation of FDCPA | DISMISSED |
| 10 | 42 U.S.C. § 1983 | DISMISSED |
| 11 | Civil Conspiracy/Concert of Action | DISMISSED to the extent the claim alleges a conspiracy with respect to an alleged third-party breach of contract based on Beaumont's § 501(c)(3) status <br><br> CLAIM REMAINS to the extent it alleges a conspiracy regarding (1) an alleged contract between Beaumont and the Burtons, (2) the Burtons' claim that Beaumont breached an alleged duty of good faith and fair dealing with respect to the alleged contract between Beaumont and the Burtons, and (3) the Burtons' claim for violation of MCPA. The parties did not brief those issues. |
| 12 | Aiding and Abetting | DISMISSED to the extent the claim alleges aiding and abetting with respect to an alleged third-party breach of contract based on Beaumont's § 501(c)(3) status <br><br> CLAIM REMAINS to the extent it alleges aiding and abetting regarding (1) an alleged contract between Beaumont and the Burtons, (2) the Burtons' claim that Beaumont breached an alleged duty of good faith and fair dealing with respect to the alleged contract between Beaumont and the Burtons, and (3) the Burtons' claim for violation of MCPA. The parties did not brief those issues. |

SO ORDERED.