Melissa Michelle **VALENCIA** and **Sheketar Crear, on Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

**MISSISSIPPI BAPTIST MEDICAL CENTER, INC., Mississippi Baptist Health Systems, Inc., and the American Hospital Association, Defendants.**

No. CIV.A. 3:04–CV–628BN.

United States District Court,
S.D. Mississippi,
Jackson Division.

March 29, 2005.

David C. Dunbar, Dunbarmonroe, PLLC, Jackson, David L. Merideth, David L. Merideth, PLLC, Ridgeland, Don John W. Barrett, Barrett Law Offices, Lexington, Richard F. Scruggs, The Scruggs Law Firm, PA, Oxford, Elizabeth J. Cabraser(PHV), Lieff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, H.L. Merideth, Jr., David L. Merideth, PLLC, Ridgeland, for Melissa Michelle Valencia oh behalf of herself and all others similarly situated, Sheketar Crear on behalf of herself and all others similarly situated, Plaintiffs.

Eugene R. Naylor, Wise, Carter, Child & Caraway, George H. Ritter, Wise, Carter, Child & Caraway, Jackson, Mitchell E. Zamoff(PHV), Hogan & Hartson, Washington, DC, W. Wayne Drinkwater, Jr., Bradley Arant Rose & White LLP, Jackson, Catherine E. Stetson(PHV), Hogan & Hartson, Christopher R. Zaetta(PHV), Hogan & Hartson, Washington, DC, Danielle Daigle Ireland, Bradley, Arant, Rose & White, LLP, Melody McAnally, Bradley, Arant, Rose & White, LLP, Jackson, Ty Cobb(PHV), Hogan & Hartson, Washington, DC, for Mississippi Baptist Medical Center, Inc., Mississippi Baptist Health Systems, Inc., American Hospital Association, John Does, Defendants.

## OPINION AND ORDER

BARBOUR, District Judge.

Before the Court are six motions. First is the Motion of Defendants Mississippi Baptist Medical Center, Inc. and Mississippi Baptist Health Systems, Inc. (collectively referred to as "Baptist") to Dismiss, filed August 23, 2004. Second is the Motion of Baptist for Summary Judgment, filed August 24, 2004. Third is the Motion of Defendant American Hospital Association ("AHA") to Dismiss, filed October 18, 2004. Fourth is the Motion of Plaintiffs to Amend Class Action Complaint, filed November 22, 2004. Fifth is the second Motion of Plaintiffs to Amend Class Action Complaint, filed March 2, 2005. Sixth is the Motion of Plaintiffs to Amend Case Management Order, filed March 2, 2005. Having considered the Motions, Responses, Rebuttals, attachments to each and supporting and opposing authority, the Court finds as follows:

1. The Motion of Baptist to Dismiss is well taken and should be granted.

2. The Motion of Baptist for Summary Judgment should be denied as moot.

3. The Motion of AHA to Dismiss is well taken and should be granted.

4. The first Motion of Plaintiffs to Amend Class Action Complaint is well taken and should be granted.

5. The second Motion of Plaintiffs to Amend Class Action Complaint is not well taken and should be denied.

6. The Motion of Plaintiffs to Amend Case Management Order is not well taken and should be denied.

In the section entitled "Analysis," *infra,* the Court first discusses the Motions of Plaintiffs to Amend Class Action Complaint and the Motion of Plaintiffs to Amend Case Management Order. The Court proceeds to discuss the Motion of Baptist to Dismiss the federal claims against Baptist, the Motion of AHA to dismiss the state law claims against AHA, and then the question of whether the Court should exercise supplemental jurisdiction over the remaining state law claims against Baptist.

## I. Background and Procedural History

Plaintiffs' claims are similar or identical to the claims put forth by other plaintiffs in a host of cases across the country. Every single federal court that has analyzed claims such as those put forth by Plaintiffs has dismissed them. Today, this Court does the same.

Plaintiffs Melissa Michelle Valencia, Sheketar Crear, and Peggy Corbitt[1] were uninsured, indigent medical patients of Baptist, who despite their indigence, did not qualify for public aid for medical services. Despite the fact that Plaintiffs had no insurance and could not receive public aid for medical services, Plaintiffs sought emergency medical treatment at Baptist.[2] Baptist agreed to provide the emergency medical treatment to Plaintiffs, but as is apparently the customary practice when dealing with uninsured patients who do not qualify for medical aid and who seek emergency medical treatment, Baptist had Plaintiffs sign a contract before receiving the medical services. The contract served as a financial guarantee, with Plaintiffs' promising to pay Baptist a reasonable sum for services rendered. Baptist rendered the services, and Plaintiffs did not pay. Baptist has since completed state court actions or has pending state court actions against individual Plaintiffs to recover these fees.[3]

The heart of Plaintiffs' grievance is that, as demonstrated by the actions of Baptist to recover the medical fees due them by Plaintiffs, (1) Baptist wrongfully and unreasonably charged uninsured Plaintiffs higher fees than would be charged to an insured patient for exactly the same services, and (2) Baptist wrongfully conditioned the receipt of certain medical services on Plaintiffs' ability to pay. From these generalized grievances, Plaintiffs bring purported federal and state claims against Defendants Baptist and AHA.

Plaintiffs' various federal claims against Baptist can be placed in two categories.

1. Although Peggy Corbitt does not appear in the title of the Opinion and Order, she will be added as a named Plaintiff to this action, as discussed *infra.*

2. Plaintiffs Sheketar Crear and Peggy Corbitt explicitly state that they sought emergency medical treatment. Only with respect to Plaintiff Melissa Michelle Valencia is it unclear as to whether she sought aid in the emergency department of Baptist, or whether she sought aid at Baptist in a non-emergency division. The distinction is of no significance to the final resolution of this Opinion and Order. The Court only notes the distinction to clarify the factual background to this proceeding.

3. Because the Court finds that Plaintiffs have failed to state a claim for which relief may be granted, and that even if they had stated such a claim Plaintiffs lack standing, as discussed *infra,* the Court need not reach Defendants' arguments concerning the application of collateral estoppel and/or res judicata towards individual Plaintiffs against whom state court actions have been completed. *See Delta Commercial Fisheries Ass'n v. Gulf of Mexico Fishery Management,* 364 F.3d 269, 273 (5th Cir. 2004) (stating that "[a] plaintiff's failure to establish one of three elements of Article III standing deprives federal courts of jurisdiction to hear the plaintiff's suit").

First, Plaintiffs bring claims under 26 U.S.C. § 501(c)(3). Second, Plaintiffs bring claims under the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd.

As to Plaintiffs' claims under § 501(c)(3), Plaintiffs assert causes of action for third party breach of contract, breach of the duty of good faith and fair dealing, breach of charitable trust, and unjust enrichment/constructive trust. Section 501(c)(3) provides tax exemptions to organizations that are "organized and operated exclusively for...charitable...purposes...no part of the net earnings of which inures to the benefit of any private shareholder or individual...."[4] Baptist operates as a non-profit hospital and receives tax exemptions under § 501(c)(3). Plaintiffs argue that by receiving tax exemptions under § 501(c)(3), Baptist entered into a contract with the United States of America (the "government"). Plaintiffs argue that the *quid pro quo* constituting the basis of this contract was the offer of the government of tax exemptions in exchange for Baptist providing significant amounts of charity care. Plaintiffs argue that Baptist breached the contract by not providing sufficient amounts of charity care. Plaintiffs further argue that they suffered from this breach as third party beneficiaries of the contract. Based upon the notion that there was contract, that Baptist breached the contract, and that Plaintiffs were third party beneficiaries of the contract, Plaintiffs bring the majority of their claims.

As to Plaintiffs' claims against Baptist for violation of the EMTALA, Plaintiffs argue that Baptist violated the EMTALA by conditioning the receipt of emergency medical treatment on the ability of Plaintiffs to pay for the treatment. Plaintiffs argue that it is apparent that Baptist conditioned treatment on payment because before Baptist treated Plaintiffs, Baptist had Plaintiffs sign form contracts guaranteeing payment, and then when Plaintiffs failed to make the payments under the contract, Baptist sued them.

All remaining claims in this action against Baptist are state law claims. These claims include claims for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, and violation of the Mississippi Consumer Protection Act.[5]

The claims against AHA include claims for aiding and abetting and civil conspiracy, and are brought against AHA on the theory that AHA enabled and advised

---

4. Section 501(c)(3) provides in full:
   (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

5. Many of the claims against Baptist asserted under § 501(c)(3) are also asserted against Baptist under local and state tax laws. This Opinion and Order solely rules on Plaintiffs' claims which arise under federal law. Because Plaintiffs have no claims under federal law, as discussed *infra*, the Court does not discuss Plaintiffs' claims arising under state law, as the Court chooses not to exercise supplemental jurisdiction over those claims. This Opinion and Order is not to be construed as having any preclusive effect on any causes of action that arise under state law.

Baptist to engage in illegal financial practices.

## II. Legal Standard

Motions for dismissal under 12(b)(6) are "viewed with disfavor" and "rarely granted." *Lowrey v. Texas A & M Univ. Syst.,* 117 F.3d 242, 247 (5th Cir.1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards,* 677 F.2d 1045, 1050 (5th Cir.1982)). The court must interpret the complaint liberally in the plaintiff's favor, taking all facts pleaded in the complaint as true. *Lowrey,* 117 F.3d at 247 (quoting *Campbell v. Wells Fargo Bank,* 781 F.2d 440, 442 (5th Cir.1986)). Dismissal is not proper "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (*quoted in Lowrey,* 117 F.3d at 247); *Blackburn v. Marshall,* 42 F.3d 925, 931 (5th Cir.1995)). "However, the complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir.1995) (ellipsis in original) (quoting 5 Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 1216 at 156–59).

## III. Analysis

### III.A. Motions of Plaintiffs to Amend Class Action Complaint and Amend Case Management Order

Plaintiffs have filed two Motions to Amend their Class Action Complaint in this case. Plaintiffs filed the first Motion to Amend Class Action Complaint on November 22, 2004. This Motion was timely, as the case management order for this case set November 28, 2004, as the deadline on which to file motions for amendments to pleadings. All that the first Motion to Amend Class Action Complaint seeks is to add Peggy Corbitt as a named Plaintiff in this action. Because the Motion is timely, it is well taken and is granted. The proposed First Amended Class Action Complaint, attached to the Motion to Amend Class Action Complaint as Exhibit "A," is now the controlling Complaint in this action, and Peggy Corbitt is now the third named Plaintiff to this action.

Plaintiffs filed their second Motion to Amend Class Action Complaint on March 2, 2005, a date more than three months past the deadline on which to file motions to amend pleadings, and a date approximately six months after Baptist filed the instant Motion to Dismiss and a Motion for Summary Judgment. On the same day, Plaintiffs also filed their Motion to Amend Case Management Order, presumably in an effort to persuade the Court to accept their untimely filed Motion to Amend Class Action Complaint. In the proposed Second Amended Class Action Complaint, Plaintiffs seek to add a cause of action against Baptist for violation of the Fair Debt Collection Practices Act. Plaintiffs provide scant reason as to why the case management order should be amended to allow the untimely filed amended complaint. As the reason for amendment, Plaintiffs state in whole that

> [n]ewly discovered relevant facts and information in the County Court of Hinds County, Mississippi, via the video deposition Mr. Richard Williams, 'President' of Healthcare Financial Services, LLC, the 'for profit' collection entity owned and controlled by Mississippi Baptist Medical Center, Inc., has revealed a reasonable basis to amend the *First Amended Class Action Complaint* to include the Federal Fair Debt Collection Practices Act as an additional Count.

Plaintiffs' Motion to Amend Case Management Order, p. 1, ¶ 1, filed March 17, 2005. Plaintiffs attach three exhibits to the sec-

ond Motion to Amend Class Action Complaint, docket entry no. 65, presumably as evidence of what these "newly discovered relevant facts and information" are. But Plaintiffs do not discuss how or why the information in these exhibits is "newly discovered" or why the information provides Plaintiffs with information that was not previously available to them. Defendants correctly note that the "newly discovered" information from the deposition of Mr. Richard Williams has been available since January 19, 2005, the day on which the deposition was taken.

As is briefed by Defendants, the information provided to the Court in the exhibits was known and/or readily available to Plaintiffs well before this late date. Plaintiffs cannot now proclaim this information as "newly discovered" and rely on it as a reason for this Court to accept the untimely amended pleading. The Court agrees with Defendants that "[i]t is perhaps no coincidence that plaintiffs filed this motion one day after the ruling by Judge Lee [dismissing] *Wright, et al. v. St. Dominic Health Services, Inc., et al.,* Civil Action No. 3:04cv521LN; the other case filed by plaintiff's counsel in the Southern District of Mississippi." Defendants' Response to Plaintiffs' Motion to Amend Case Management Order, pp. 1–2, ¶ 1, filed March 11, 2005(referring to the opinion by Judge Lee which dismissed all of the same claims submitted by Plaintiffs in this case except for a claim under the FDCPA, which was not pleaded in the action before Judge Lee). Plaintiffs cannot simply react to other federal cases in the country that have dismissed all of the plaintiffs' claims, which were identical to the original claims in this action, by simply adding claims to the action in this Court at this late date.

It is readily apparent that the late date of the filing of the second Motion to Amend Class Action Complaint amounts to undue delay. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)(holding that leave to file an amended pleading may be denied if it is apparent that the movant engaged in undue delay). Therefore, the second Motion to Amend Class Action Complaint is not well taken and is denied.

### III.B. Motion of Defendants Baptist and AHA to Dismiss

### III.B.1. Plaintiffs' Claims Against Baptist Under 26 U.S.C. § 501(c)(3)

Plaintiffs assert claims against Baptist under § 501(c)(3) for third party breach of contract, breach of the duty of good faith and fair dealing, breach of charitable trust, and unjust enrichment/constructive trust. Each claim is discussed in turn, *infra.*

### III.B.1.a. Third Party Breach of Contract

■ Plaintiffs claim for third party breach of contract rests upon the argument that Baptist and the government entered into a contract when Baptist received tax exemptions under § 501(c)(3). Plaintiffs argue that Baptist breached the contract by failing to provide significant amounts of charity care, and that Plaintiffs, as third party intended beneficiaries of the contract, were damaged by its breach.

### III.B.1.a.i. 26 U.S.C. § 501(c)(3) Does Not Create a Contract Between the Government and Baptist

The initial hurdle facing Plaintiffs, which they cannot cross, is that Plaintiffs must establish that § 501(c)(3) creates a contract between the government and Baptist. Plaintiffs' argument that § 501(c)(3) creates a contract has been explicitly rejected by every single federal court that has addressed the issue. *E.g., Darr v. Sutter Health,* No. 04–02624, 2004 WL 2873068, at *3–4 (N.D.Cal. Nov.30, 2004); *Lorens v.*

*Catholic Health Care Partners,* 356 F.Supp.2d 827, 835 (N.D.Ohio 2005); *Peterson v. Fairview Health Servs.,* No. Civ. A04–2973 ADM/AJB, 2005 WL 226168, at *5 (D.Minn. Feb.1, 2005); *Shriner v. ProMedica Health System, Inc.,* No. 3:04CV7435, 2005 WL 139128 (N.D.Ohio Jan.21, 2005); *Burton v. William Beaumont Hosp.,* 347 F.Supp.2d 486, 493–94 (E.D.Mich.2004); *Darlene Daly, et al. v. Baptist Health, et al.,* docket entry no. 5, No. 4:04CV789GH, at 6 (E.D.Ark. Jan. 31, 2005); *George Scott Ferguson, et al. v. Centura Health Corp.,* 358 F.Supp.2d 1014, 1017 (D.Colo.2004); *Thomas E. Hudson v. Central Georgia Health Systems, Inc.,* No. 5:04–CV–301(DF), at 6–7 (M.D. Ga. Jan 13, 2005); *Katie M. Washington v. Medical Center of Central Goergia, Inc.,* No. 5:03CV185(CAR), at 4 (M.D.Ga. Jan. 21, 2005); *Gary Amato, et al. v. UPMC, et al.,* No. 04–1025, at 4 (W.D.Pa. Nov. 32, 2004); *Sabata v. Baptist Hosp. of Miami, Inc.,* docket entry no. 86, No. 04–21437–CIV–JORDAN (S.D.Fla. Feb. 23, 2005). Section 501(c)(3) contains no contract-creating language; it simply lists organizations that are exempt from taxation.[6] Every court rejecting the notion that § 501(c)(3) creates a contract has relied on the central reasoning that

> [a]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that 'a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.' This well-established presumption is grounded in the elementary proposition that the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state. Policies, unlike contracts, are inherently subject to revision and repeal, and to construe laws as contracts when the ob-

ligation is not clearly and unequivocally expressed would be to limit drastically the essential powers of a legislative body. Indeed, '[t]he continued existence of a government would be of no great value, if by implications and presumptions, it was disarmed of the powers necessary to accomplish the ends of its creation.' Thus, the party asserting the creation of a contract must overcome this well-founded presumption, and we proceed cautiously both in identifying a contract within the language of a[tax] statute and in defining the contours of any contractual obligation.

*Nat'l R.R. Passenger Corp. v. Atchison Topeka and Santa Fe Ry. Co.,* 470 U.S. 451, 465–466, 105 S.Ct. 1441, 84 L.Ed.2d 432 (1985) (internal citations omitted). This Court agrees with the reasoning and conclusions reached by other district courts around the country. Section 501(c)(3) contains no language, either explicitly or implicitly, which suggests that Congress intended to create a contract between the government and an organization when an organization receives tax exemptions under § 501(c)(3).

Plaintiffs attempt to overcome the fact that § 501(c)(3) contains no contract-creating language by analogizing § 501(c)(3) to the Hill–Burton Act, 42 U.S.C. § 291. The Hill–Burton Act is

> a government program that awarded funds to hospitals servicing uninsured or indigent patients. [Plaintiffs] argue[ ] that since courts recognized the Hill–Burton Act as an enforceable contract between hospitals and the government, 501(c)(3) should also be read as a contract. *See Flagstaff Medical Ctr., Inc. v. Sullivan,* 962 F.2d 879 (9th Cir.1992). This analogy is not persuasive because the Hill–Burton Act is substantially different from 26

---

6.  See statute in full, *supra.*

U.S.C. § 501(c)(3) for a number of reasons. The Hill–Burton Act provided direct funds to hospitals; 501(c)(3) provides tax exemptions. The Hill–Burton Act required applicants to sign a 'Memorandum of Agreement' containing express contractual language; 501(c)(3) recognition is accorded by the IRS with no such contractual agreement. *See Euresti v. Stenner,* 458 F.2d 1115, Appx. (10th Cir.1972). The Hill–Burton Act provided funds for organizations performing specific, pre-negotiated purposes; 501(c)(3) provides tax exemptions to organizations for multiple permissible purposes. Hill–Burton provided for a private cause of action to enforce the Act, *see* 42 U.S.C. § 300s–6; 501(c)(3) only permits the IRS or the organization seeking tax exemption to challenge a determination on 501(c)(3) eligibility, *see* 26 U.S.C. § 7428(a). Therefore, while the Hill–Burton Act created a contract by virtue of its conditional government grants, 26 U.S.C. 501(c)(3) did not create such a contract.

*Lorens,* 356 F.Supp.2d at 832.

Because § 501(c)(3) does not create a contract between the government and Baptist, there is no underlying contract on which Plaintiffs may base an action for third party breach of contract. Therefore, Plaintiffs' claim against Baptist for third party breach of contract must be dismissed, with prejudice.

### III.B.1.a.ii. Even Assuming 26 U.S.C. § 501(c)(3) Created a Contract Between the Government and Baptist, Plaintiffs do not have an Implied Private Right of Action Under § 501(c)(3)

■ Even assuming § 501(c)(3) created a contract, Plaintiffs would still have to demonstrate that there is either an express or implied private right of action under § 501(c)(3). Neither is present. As has been recognized by numerous courts, *e.g., Darr v. Sutter Health,* No. 04–02624, 2004 WL 2873068, *3 (N.D.Cal. Nov.30, 2004), neither the language of § 501(c)(3) nor the language of any other provision of § 501 provides Plaintiffs with an express cause of action. Plaintiffs argue that a private right of action can be properly implied under § 501(c)(3), but "[t]he assertion that the [Plaintiffs] have an implied right of action under § 501(c)(3) is extraordinary given the fact that the Supreme Court [of the United States] has counseled against construing a statute as creating a contractual relationship." *Burton,* 347 F.Supp.2d at 493.

In order to determine whether an implied private right of action exists under a statute, the Court simply asks whether Congress intended to create a private cause of action. *Lorens,* 356 F.Supp.2d at 833(stating that "the Supreme Court [of the United States] has reduced the *Cort* inquiry [7] to one simple question: did Con-

---

**7.** The four factor *Cort* inquiry was adopted by the Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). When determining whether a federal statute implicitly provided for a private right of action, the Supreme Court instructed a court to look to the following four factors:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'...Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one?... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?'

*Id.* at 78, 95 S.Ct. 2080(internal citations omitted). Many courts have explicitly recognized that the four-prong test in *Cort* has been overruled. *E.g., Park Nat. Bank of Chicago v. Michael Oil Co.,* 702 F.Supp. 703 (N.D.Ill.1989)(stating that "[i]n *Thompson v.*

gress intend to create a private cause of action") and (citing *Alexander*, 532 U.S. at 286–87, 121 S.Ct. 1511). A court determines congressional intent by looking to the text and structure of a statute. *See id.* As recognized by numerous courts, *e.g.*, *Lorens*, 356 F.Supp.2d at 833, there is simply no indication that Congress intended to create a private right of action under § 501(c)(3). And "[i]f Congress had wanted to create a private right of action for the uninsured or for indigent patients, it knew how to do so." *Id.* at 833; *see also Burton*, 347 F.Supp.2d at 493(stating that "[a]s [Baptist] notes in its brief, the absence of a private right of action under § 501(c)(3) is noteworthy because Congress has established private rights of action in the Internal Revenue Code for other tax-related matters"); *Salazar v. Brown*, 940 F.Supp. 160, 166 (W.D.Mich.1996)(holding that "the Sixth Circuit would clearly find it persuasive that Congress has passed thousands of amendments to the…Internal Revenue Code, virtually on a yearly basis, without once creating a private right of action"). There is nothing on which this Court could base a finding that a private right of action can be properly implied under § 501(c)(3). Therefore, even assuming there was a con-

tract, § 501(c)(3) does not provide Plaintiffs with an implied right of action for third party breach of contract.

### III.B.1.a.iii. Even Assuming a Contract and an Implied Private Right of Action, Plaintiffs have No Standing

■ Even assuming there was a contract and an implied right of action, Plaintiffs do not have standing to enforce the contract. For Plaintiffs to demonstrate that they have standing under such a contract, Plaintiffs would have to demonstrate that they are direct beneficiaries of § 501(c)(3). Plaintiffs can demonstrate no more than that they are incidental beneficiaries of § 501(c)(3), as nothing in § 501(c)(3) explicitly names potential beneficiaries. *Lorens*, 356 F.Supp.2d at 833; *see also State of Mont. v. U.S.*, 124 F.3d 1269, 1273 & n. 6 (Fed.Cir.1997). Furthermore, nothing impliedly suggests that Plaintiffs were intended to be direct beneficiaries of § 501(c)(3). *State of Mont.*, 124 F.3d at 1269 & n. 6. Being an incidental beneficiary of § 501(c)(3) is not a sufficient basis on which to bring suit. *Id.*(holding that when a member of the public brings suit against promisors who contract with the government for a public service, the

*Thompson*, Justice Scalia noted in his concurring opinion that the Supreme Court effectively overruled the *Cort v. Ash* analysis in *Touche Ross & Co. v. Redington* and *Transamerica Mortgage Advisors, Inc. v. Lewis*" (internal citations omitted); *see also Thompson v. Thompson*, 484 U.S. 174, 189, 108 S.Ct. 513, 98 L.Ed.2d 512 (1988)(stating that

[i]t could not be plainer that we effectively overruled the *Cort v. Ash* analysis in *Touche Ross & Co. v. Redington* and *Transamerica Mortgage Advisors, Inc. v. Lewis,* converting one of its four factors (congressional intent) into *the determinative factor,* with the other three merely indicative of its presence or absence

(Internal citations omitted). Other courts have taken a more reserved approach. *See First Pacific Bancorp, Inc. v. Helfer,* 224 F.3d

1117, 1122 (9th Cir.2000)(recognizing that the Supreme Court has emphasized that congressional intent is the key inquiry, as well as that "there has been some suggestion that *Cort* has been overruled," but nevertheless finding helpful the application of the four factors). Because Supreme Court decisions have focused on congressional intent, and because this Court finds such an intent totally lacking in this instance, the Court finds it unnecessary to discuss the other three factors. *See Alexander v. Sandoval,* 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (stating in an opinion written by Justice Antonin Scalia that "[w]e therefore begin (and find that we can end) our search for Congress's intent with the text and structure of [§ 501(c)(3) ]").

member of the public must show that he or she has a direct right to compensation under the statute, and not that they are merely incidental beneficiaries). Therefore, even assuming a contract and an implied right of action, Plaintiffs have no standing.

In reaching this three-part conclusion, the Court finds persuasive reasoning in *Lorens*, 356 F.Supp.2d at 831–32, in which the district court in Ohio stated that

[p]ermitting this claim to continue would require the court to make numerous jumps in logic that run counter to legal authority. First, the court would need to find that the tax code creates a binding contract, a proposition for which there is nearly no legal support. The court would then need to find an implied cause of action in the tax statute granting private citizens the right to sue for damages, a cause of action that is not supported by the case law. Next, the court would need to find that Plaintiff had standing to sue as a third-party beneficiary on a purported contract under which Plaintiff and Plaintiff's class are not specifically mentioned as third party beneficiaries. Even if the court made these stretches in legal interpretation, the court would then need to construct specific terms in such a contract (specific terms that do not appear to exist in the statutory or regulatory language) and assess whether Plaintiff's allegations, if true, could constitute a breach. While the court in no way minimizes the importance of the issues Plaintiff seeks to raise, an analysis of the claim indicates that it has no legal merit.

### III.B.1.b.   Breach of the Duty of Good Faith and Fair Dealing

█ As Plaintiffs have no claim for breach of contract under § 501(c)(3), they can have no claim for breach of the duty of good faith and fair dealing under a contract which the Court has held does not exist. Therefore, Plaintiffs' claim against Baptist for breach of the duty of good faith and fair dealing is dismissed, with prejudice.

### III.B.1.c.   Breach of Charitable Trust Under 26 U.S.C. § 501(c)(3)

█ Plaintiffs argue that by accepting federal tax exemptions under § 501(c)(3), Baptist entered into a public charitable trust to "provide mutually affordable medical care to its uninsured patients." First Amended Class Action Complaint, p. 22. Plaintiffs argue that Baptist breached this trust by, among other ways, "failing to provide emergency room medical care to the Plaintiffs and the Class without regard to their ability to pay for such medical care" and "charging the Plaintiffs and the Class a significantly higher and full, undiscounted cost of medical care" and "charging the Plaintiffs and the Class significantly more than its insured patients for the same medical services." *Id.* at pp. 22–23. This claim is premised upon the existence of a private right of action to enforce an alleged contract "flowing from the fact that [Baptist] is a § 501(c)(3) organization." *Burton*, 347 F.Supp.2d at 494. Because the Court has found that § 501(c)(3) does not create a contract, that there is no implied right of action under § 501(c)(3), and that Plaintiffs have no standing, the claim for breach of charitable trust under § 501(c)(3) fails as well and must be dismissed, with prejudice. *See id.*

Even if Plaintiffs were able to establish the existence of a charitable trust, Plaintiffs would not be proper parties for pursuing an alleged breach. "It is well settled that private parties like the [Plaintiffs] may not sue to enforce a charitable trust in circumstances like the [Plaintiffs'] claim here; rather, the Attorney General is the proper party." *Id.*

878

### III.B.1.d. Plaintiffs' Claim Against Baptist for Unjust Enrichment/Constructive Trust

■ Similar to Plaintiffs' claim for breach of charitable trust, Plaintiffs' claim against Baptist for unjust enrichment/constructive trust is premised upon the notion that Baptist violated requirements contained in a contract under § 501(c)(3). As a result of this alleged violation, Plaintiffs argue that they are

> entitled to certain damages resulting from Defendant Baptist's unjust enrichment, including but not limited to, the imposition of a constructive trust in the amount of Defendant Baptist's federal, state, and local tax exemption savings. The Plaintiffs and the Class are also entitled to the imposition of a constructive trust on all profits Defendant Baptist wrongfully obtained by charging the Plaintiffs and the Class a significantly higher and full, undiscounted cost of medical care.

First Amended Complaint, p. 25, ¶ 69.

'A constructive trust is a fiction of equity created for the purpose of preventing unjust enrichment by one who holds legal title to property which, under principles of justice and fairness, rightfully belongs to another.' A constructive trust is:

> one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.

Even though unjust enrichment and constructive trust are claims based in equi-

ty, to recover under either of these theories, [Plaintiffs] must first show that the contract is void and/or that [Baptist] breached the contract.

*Union National Life Ins. Co. v. Crosby,* 870 So.2d 1175, 1181 (Miss.2004)(internal citations omitted).

The Court agrees with the conclusion reached by the district court in Minnesota in *Peterson,* 2005 WL 226168, at *8.

> The conclusion that § 501(c)(3) imposes no requirement that hospitals provide mutually affordable medical care to the uninsured also spells the demise of this claim. Further, the unjust enrichment claim amounts to a collateral attack on the IRS's decision to grant Defendants tax-exempt status. As the Court has already noted, it is the Secretary of the Treasury's responsibility to oversee the tax code and only the IRS can contest whether a nonprofit organization should retain tax-exempt status. The IRS granted Defendants' § 501(c)(3) status and an unjust enrichment claim [cannot] lie when benefits have been knowingly conferred. Furthermore, even assuming Defendants were unjustly enriched by failing to meet their § 501(c)(3) obligations, Plaintiffs lack standing to assert an unjust enrichment claim. Finally, a constructive trust may not be imposed without a showing that Defendants obtained property by fraud, bad faith, duress, undue influence or other improper means. Plaintiffs acknowledge they received appropriate medical treatment from Defendants and there is no evidence of bad faith proffered.

*Id.*(internal citations omitted). Therefore, Plaintiffs' claim against Baptist for unjust enrichment and an ensuing imposition of a constructive trust must be dismissed, with prejudice.

### III.B.2. Plaintiffs' Claim for Violation of the Emergency Medical Treatment and Active Labor Act, 42 U.S.C. § 1395dd

■ At least two of Plaintiffs received treatment from the emergency medical department at Baptist. Prior to Plaintiffs' receiving emergency medical treatment, Baptist required Plaintiffs to sign form contracts which evidenced Plaintiffs' obligation to pay for any treatment received. Plaintiffs argue that by using these contracts, Baptist illegally conditioned the receipt of emergency medical services on Plaintiffs' ability to pay. Because Plaintiffs do not allege the requisite injury to bring a claim under the EMTALA, their claim must fail.

Plaintiffs' argument begins with the general provisions of the EMTALA, § 1395dd. Section 1395dd(a) provides that if any person comes to a hospital with an emergency department, the hospital must provide a medical screening examination to determine whether the person has an emergency medical condition. Should the hospital determine that an emergency medical condition exists, then the hospital must stabilize the individual. §§ 1395dd(b) & (c). Once the individual is stabilized, the hospital may then opt to either continue to treat the individual, transfer the individual to another hospital, or discharge the individual in accordance with §§ 1395dd(b) & (c).

From this general statutory framework, Plaintiffs argue Baptist violated the EMTALA because "Defendant Baptist required Plaintiffs to sign payment financial guarantees *before* they were screened or treated" and that "[s]uch conditional screenings and treatment violate EMTALA's requirement that patients must be screened or treated 'without regard to ability to pay.'" Memorandum in Support of Plaintiffs' Response to the Motion of Baptist to Dismiss, p. 23(emphasis in original). Even assuming that Baptist illegally conditioned the treatment of Plaintiffs on their ability to pay,[8] Plaintiffs have no claim under the EMTALA because they have not pleaded the requisite injury for a patient to bring a claim under the Act.

A single provision of the EMTALA, § 1395dd(d)(2)(A), provides for civil enforcement of the Act by patients, and that provision states:

(A) Personal harm

Any individual who suffers *personal harm* as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for *personal injury* under the law of the State in which the

---

8. This is a far reaching assumption, given that Plaintiffs have been treated but have still not paid for the treatment. Nevertheless, it could appear that Plaintiffs were required to pay to receive emergency medical treatment, given that Baptist instituted debt collection proceedings when Plaintiffs did not pay (irrespective of the fact that Plaintiffs were not technically required to "show the money" before receiving treatment, but only to promise that Plaintiffs would). The sticking point is that Plaintiffs cannot demonstrate that they refused to sign the contract, and as a result of that refusal, were denied treatment.

It logically follows that in this case the question becomes whether a simple request for a promise to pay (with the knowledge that a breaking of that promise will lead to debt collection proceedings) violates the EMTALA. Stated another way, does such a request rise to the level of conditioning a patient's treatment on his or her ability to pay. The Court need not reach the answer to that question because, regardless of the answer, Plaintiffs have not demonstrated the requisite injury. The Court does note that, at a minimum, § 1395dd(h) implicitly contemplates that a hospital may make a simple request for a promise to pay, as the statute only explicitly prohibits that a medical screening exam not be delayed because of a request for payment.

hospital is located, and such equitable relief as is appropriate.

(Emphasis added). Plaintiffs attempt to qualify for damages under this provision by broadly alleging that they have suffered "personal harm" as a result of the purported violations by Baptist of the EMTALA. Memorandum in Support of Plaintiffs' Response to the Motion of Baptist to Dismiss, p. 22. After making this broad allegation, Plaintiffs proceed to define the personal harm they have suffered by listing examples. These examples only include economic harms. *Id.*

Plaintiffs appear to recognize that they have only pled economic damages and that this type of damages might not suffice to bring a claim when they state that "Defendant Baptist ignores these allegations and implies that 'personal harm' under EMTALA is narrowly restricted to 'physical injury.'" *Id.* That is indeed what Baptist implied, as every court addressing the issue has determined that economic injuries are insufficient for a showing of personal harm under the EMTALA. *E.g., Burton,* 347 F.Supp.2d at 496–97(finding that the pleading of solely economic injuries was insufficient for a finding of personal harm under the EMTALA).

Plaintiffs argue there is no support for reading the EMTALA to require more than economic injuries for individual plaintiffs to recover under the Act. Plaintiffs base this argument on the fact that hospitals are allowed to recover for economic injuries under the EMTALA. *See* § 1395dd(d)(2)(B). Plaintiffs argue that by precluding patients from recovery for economic injuries but allowing hospital such recovery would result in a "double standard" treatment of patients and hospitals under the EMTALA. The implicit logical conclusion of Plaintiffs' argument is that such a "double standard" is unaccept-

able. Such a subjective viewpoint of Plaintiffs' of the value choice of Congress is not an acceptable ground on which to read the EMTALA as permitting Plaintiffs' claims.

A fair reading of § 1395dd(d)(2)(A) & (B) suggests that a "double standard" is exactly what Congress intended. Section 1395dd(d)(2)(A), quoted *supra,* only explicitly speaks to recovery for patients in situations of personal harm. Section 1395dd(d)(2)(B), however, which provides for recovery for hospitals, explicitly provides for the recovery of economic damages when stating

(B) Financial loss to other medical facility

Any medical facility that suffers a financial loss as a direct result of a participating hospital's violation of a requirement of this section may, in a civil action against the participating hospital, obtain those damages available for financial loss, under the law of the State in which the hospital is located, and such equitable relief as is appropriate.

The Court believes that a comparison of these two statutory provisions makes plain that Congress did not intend for patients to be able to recover for economic injuries. Had Congress so intended, then it could have so provided, as it did with medical facilities. Therefore, because the Court finds that the type of harm suffered by Plaintiffs is insufficient to support a claim under the EMTALA, Plaintiffs' claim against Baptist for violation of the EMTALA is dismissed, with prejudice.

### III.B.3. Plaintiffs' State Law Claims Against AHA

■ Plaintiffs bring state law claims against AHA for civil conspiracy and for aiding and abetting. These state law claims rely upon a finding that Plaintiffs could maintain a claim against Baptist under § 501(c)(3) and the EMTALA.[9]

9. As with the claims against Baptist, to the extent that Plaintiffs' state law claims against

AHA for civil conspiracy and for aiding and

As this Court rejected the premise of a contractual obligation, [Baptist] and the AHA could not have entered into a conspiracy to breach a contract, and the AHA could not have aided and abetted [Baptist] in avoiding the non-existent obligations. Insofar as these claims depend on § 501(c)(3) [and the EMTALA], they must be dismissed...for failure to state a claim upon which relief can be granted.

*Peterson*, 2005 WL 226168, at *10. Therefore, Plaintiffs' claims against AHA for civil conspiracy and aiding and abetting are dismissed, with prejudice.

### III.B.4. Plaintiffs' State Law Claims Against Baptist

No federal claims exist against Baptist (as they have been dismissed), and both Baptist and Plaintiffs are citizens of Mississippi. Hence, diversity of citizenship does not exist over the remaining claims, and the Court does not have original subject matter jurisdiction over the remaining claims because each claim is a state law claim. The remaining state law claims against Baptist are for: (1) violation of the Mississippi Consumer Protection Act; (2) breach of contract; (3) breach of the duty of good faith and fair dealing; (4) third party breach of contract based upon local and state tax exemptions; (5) breach of charitable trust based upon local and state tax exemptions; and (6) unjust enrichment/constructive trust based upon local and state tax exemptions.

The Court must determine whether to exercise supplemental jurisdiction over these remaining state law claims. Such a determination is driven by 28 U.S.C. § 1367(c)(3), which provides in relevant part: "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if...(3) the district court has dismissed all claims over which it has original jurisdiction...." This is the current posture of the case before the Court.

While the decision of whether to exercise supplemental jurisdiction in such a scenario is discretionary, "the general rule [is that] it is proper to decline to exercise supplemental jurisdiction over state law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Yetiv v. Hall*, No. 04–20206, 2005 WL 19500, at *3 (5th Cir. Jan.5, 2005)(citing *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999)). Consistent with the general rule, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.[10]

### IV. Conclusion

IT IS THEREFORE ORDERED that

1. The Motion of Baptist to Dismiss [3–1] is well taken and is hereby granted.

2. The Motion of Baptist for Summary Judgment [4–1] is hereby denied as moot.

3. The Motion of AHA to Dismiss [30–1] is well taken and is hereby granted.

4. The first Motion of Plaintiffs to Amend Class Action Complaint [52–1] is well taken and is hereby granted.

5. The second Motion of Plaintiffs to Amend Class Action Complaint [63–1] is not well taken and is hereby denied.

---

abetting rely upon state law, this Opinion and Order is not to be construed as having any preclusive effect on those claims.

**10.** As this Opinion and Order dismisses all of Plaintiffs' federal claims and declines to exercise jurisdiction over Plaintiffs' remaining state law claims, the Court need not address the remaining portions of Plaintiffs' First Amended Complaint which discuss damages and injunctive/declaratory relief.

6. The Motion of Plaintiffs to Amend Case Management Order [64–1] is not well taken and is hereby denied.

IT IS FURTHER ORDERED that in accordance with the above rulings and this Opinion and Order, Plaintiffs' federal law claims against Defendants are hereby dismissed, with prejudice.

IT IS FURTHER ORDERED that the findings of this Opinion and Order are directed towards Plaintiffs' claims arising under 26 U.S.C. § 501(c)(3) and the EM-TALA. To the extent that those claims also rely upon state law, the Opinion and Order is not to be construed as having any preclusive effect. Plaintiffs' state law claims are dismissed without prejudice.

IT IS FURTHER ORDERED that a Final Judgment shall be entered reflecting the dismissal of this matter.